**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**GYSKLYS JIMINEZ MARTINEZ**

**VS.**

**WARDEN JACKSON PARISH**
**CORRECTIONAL CENTER, ET AL.**

**CIVIL ACTION NO. 3 :26-1549**

**SECTION P**

**JUDGE S. MAURICE HICKS, JR.**

**MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT AND RECOMMENDATION

Petitioner Gysklys Jiminez Martinez,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") proceeding pro se, petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition.  [doc. # 9].  For reasons below, the Court should grant habeas corpus.

## Background

Petitioner is a citizen of Cuba.  [doc. # 1-2, p. 1].  "On or about August 30, 1995, the petitioner was paroled into the United States."  [doc. # 9-1, p. 1].

On February 18, 2009, an immigration judge ordered Petitioner removed from the United States.  [doc. # 1, p. 4].  Petitioner did not appeal the removal order.  *Id.*

"On or about May 18, 2009, the petitioner was released on order of supervision (OSUP)."  [doc. # 9-1, p. 2].

---

[1] Petitioner's 'A-Number' is 074-036-878.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On November 10, 2025, Petitioner was taken into immigration custody again.  [doc. # 1, p. 4].

Petitioner filed this proceeding on May 1, 2026.  [doc. # 1, p. 8].  Citing *Zadvydas v. Davis*, he claims that there is no significant likelihood of his removal in the reasonably foreseeable future.  [doc. # 1-2, p. 1].  He states that "there has been no meaningful progress toward effectuating" his removal, that "the government has failed to provide evidence that travel documents have been secured or that removal is imminent," that the Government tried and failed to remove him to Cuba and Mexico, and that the Government has not secured an "agreement or acceptance" from any third country.  *Id.* at 1.

Respondents opposed the petition on June 16, 2026.  [doc. # 9].  Petitioner filed a reply on June 23, 2026.  [doc. # 11].

### Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . .  or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491.  After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions."  *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters."  *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period.  To date, he has been detained 228 days (or 7 months, 16 days) following his final order of removal.

Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  For over seven months, the Government has been unable to obtain a travel document for him.  In addition, he states that "there has been no meaningful progress toward effectuating" his removal, that "the

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

government has failed to provide evidence that travel documents have been secured or that removal is imminent," that the Government tried and failed to remove him to Cuba and Mexico, and that the Government has not secured an "agreement or acceptance" from any third country. [doc. # 1-2, p. 1].

Respondents fail to rebut Petitioner's arguments. Respondents do not provide any evidence indicating that, for instance, travel documents are forthcoming or that ICE has made meaningful progress in effectuating Petitioner's removal.

Respondents attach the declaration of Acting Assistant Field Office Director Justin Williams, who declares in part:

> 18) On or about December 16, 2025, per IOD-Cuba, the petitioner's case has been denied by the government of Cuba. ERO will continue efforts to remove the petitioner to a safe third country (Mexico).
>
> 19) On or about January 11, 2026, ERO prepared a third country removal packet and noted that the petitioner has tentatively been nominated for removal to Mexico.
>
> 20) On or about February 25, 2026, a notice of failure to comply with removal and proof of service were uploaded to the Enforce Alien Removal Module (EARM).
>
> 21) On or about March 14, 2026, an e-mail was sent to the ERO team at the Florida Soft Sided Facility South to serve form I-229 (notice of alien interview) to the petitioner for the purpose of reviewing biographical history and completing the electronic post order custody review (ePOCR).
>
> 22) On or about March 23, 2026, the Deportation Officer received the served forms from the ERO team at the Florida soft sided facility-South.
>
> 23) On or about March 25, 2026, the Deportation Officer completed ePOCR and forward custody recommendations to the Supervisory Detention and Deportation Officer (SDDO) for review. The SDDO denied release from custody.
>
> 24) On or about May 1, 2026, the continued detention letter was served on the petitioner.

25) Petitioner has not been removed as of the time of this declaration, June 4, 2026, however effort are ongoing to secure petitioner's third country removal.

[doc. # 9-1, pp. 2-3].

That Cuba "denied" Petitioner, that ICE "tentatively" "nominated" him for removal to Mexico over five months ago, that a deportation officer completed "electronic post order custody review" and forwarded custody recommendations to an officer in March 2026, and that ICE is purportedly undertaking unidentified efforts to secure Petitioner's removal does not establish that removal is significantly likely to occur in the reasonably foreseeable future. Likewise, that Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future. At bottom, Respondents do not present any indication of progress in over seven months or any indication that progress will occur. The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.[4]

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[5] They do not, for example, provide any evidence that they have made progress in

---

[4] While not dispositive, the undersigned finds it persuasive that the Government has been unable to remove Petitioner for over seventeen years following his final order of removal.

[5] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than

5

obtaining travel documents, that they have been communicating with any country about Petitioner's deportation (other than receiving a declination from Cuba), that any country has recently accepted others similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[6,7]

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not

---

stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[6] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[7] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Respondents do note that on February 25, 2026, "a notice of failure to comply with removal and proof of service were uploaded to the Enforce Alien Removal Module (EARM)." [doc. # 9-1]. They do not, however, contend that Petitioner's unspecified failure to comply with removal condemns his *Zadvydas* claim. And even if they did, they do not explain how Petitioner failed to comply. Of note, in *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993), the Fifth Circuit held "that if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about." Here, however, Respondents do not contend that Petitioner's purported failure to comply prevented ICE from effecting his deportation.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[8]

---

[8] The undersigned finds no need to address any claim or request for relief not addressed herein.

**<u>Conclusion</u>**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Gysklys Jiminez Martinez's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Krome North Service Processing Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) if Petitioner has family and/or an emergency contact on record, notify them of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[9]  Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the**

---

[9] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody.  The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

**legal conclusions accepted by the District Court, except upon grounds of plain error.** *See*

*Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 26th day of June, 2026.

_____
Kayla D. McClusky
United States Magistrate Judge